UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS SCHRAMM,

    Plaintiff,

v.

NEENAH PAPER
MICHIGAN, INC, et al.,

    Defendants.
_____/

Case No. 2:22-cv-00047

Hon. Paul L. Maloney
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I.   Introduction**

This Report and Recommendation (R&R) addresses the motion to dismiss filed by Defendant Neenah Paper Michigan, Inc. (Neenah).   (ECF No. 23.)

Plaintiff Thomas Schramm filed an amended complaint asserting wrongful discharge from Neenah.   (ECF No. 18.)   This is the second lawsuit that Schramm filed against Neenah for wrongful discharge.   His first lawsuit settled, and Schramm was to return to active employment with Neenah on January 3, 2022.   Instead, Neenah fired Schramm a second time before his scheduled first day of active work.   Schramm raises multiple claims based on his allegations of wrongful termination arising out the second termination of employment.

Schramm alleges in Count I of his complaint a violation of the Whistleblower Protection Act (WPA) under Mich. Comp. Laws § 15.362, for being terminated after he reported a chemical spill to the Michigan Department of Environment, Great

Lakes, and Energy (EGLE). In Count II, Schramm asserts that Neenah breached the settlement agreement in the first lawsuit. In Count III, Schramm alleges an intentional interference with contractual relations. (Schramm has agreed to dismiss this count.) In Count IV, Schramm asserts a breach of the Collective Bargaining Agreement (CBA). In Count V, Schramm alleges that the other named Defendant – United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial Union AFL-CIO (USW) – breached its duty of representation. In Count VI, Schramm says that Neenah retaliated against him for exercising his rights under the Employee Retirement and Income Security Act (ERISA).

Neenah moves to dismiss Counts I, II, III, and VI. As noted, Schramm concedes that Count III should be dismissed.

Neenah argues that Schramm's WPA claim (Count I) should be dismissed because Schramm failed to allege that he was engaged in protected conduct at the time he telephoned EGLE about the chemical spill or, alternatively, because the WPA claim is preempted under the National Labor Relations Act (NLRA). In the opinion of the undersigned, Count I should be dismissed because Schramm failed to allege that he engaged in conducted protected under WPA.

Neenah argues that Schramm's breach of Settlement Agreement claim (Count II) fails to state a claim because the Settlement Agreement did not include his return to active employment. Schramm alleged that he was terminated before he was to return to active employment in accordance with the terms of the Settlement

2

Agreement. In the opinion of the undersigned, Schramm stated a claim for relief based under Count II.

Neenah argues that Schramm's ERISA retaliation claim must fail as a matter of law because Schramm did not assert that he was engaged in protected conduct protected by ERISA in Count VI. In the opinion of the undersigned, Schramm failed to allege facts showing that he was exercising rights protected by ERISA prior to his termination from Neenah.

It is respectfully recommended that the Court grant in part and deny in part Neenah's motion by granting Neenah's request to dismiss Count's I, III, and VI, and by denying Neenah's request to dismiss Count II.

## II. Factual Allegations

Schramm says that he was employed by Neenah for over 30 years. (ECF No. 18, PageID.134.) He says he was fired on March 1, 2021, after he reported the occurrence of a chemical spill to the State of Michigan. (*Id.*)

Schramm sues (1) Neenah and (2) United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial Union AFL-CIO (USW). (*Id.*, PageID.135.)

Schramm was employed by Neenah at Neenah's manufacturing plant in Munising, Michigan, as its Fire Chief. He was a member of the USW. (*Id.*, PageID.135-136.) Schramm asserts that, on February 19, 2021, a bleach storage line failed, and a chemical spill of 2,000 gallons of bleach occurred at the plant. (*Id.*, PageID.136.) Another employee telephoned 9-1-1 and reported the spill to Alger

County Central Dispatch. (*Id.*) The Munising and Rock River Fire Departments, and the Alger County Sheriff's Department and EMS responded to the spill. (*Id.*)

Five Neenah employees were transported to the hospital for treatment and local news outlets began posting the event on social media as early as 9:50 AM. (*Id.*, PageID.137.) Schramm's wife telephoned him at 9:53 AM to make sure that he was okay. (*Id.*) At 9:59 AM, Schramm telephoned the Michigan Department of Environment, Great Lakes, and Energy (EGLE) to report the spill.[1] (*Id.*)

EGLE responded to the report and monitored the cleanup. (*Id.*) On March 1, 2021, Neenah terminated Schramm's employment because he reported the bleach spill to EGLE. (*Id.*) The March 2, 2021, termination letter further explained:

> Tom placed an unauthorized call to the DEQ acting on behalf of Neenah, as clearly shown in the incident report he published (attached). The only employee authorized to make such a call outside of the Mill Manager, is our Environmental Engineer. This is a violation of Tom's signed confidentiality agreement, which states: "I will assume any particular information about the Corporation's business is confidential until I am informed it is not or until it has been published or is generally or publicly known outside the Corporation or (in the case of information about processes, procedures, machinery and equipment) until it has been recognized as standard practice outside the Corporation."

(*Id.*) Schramm says that this reason was a pretext because his confidentiality agreement was for trade secrets not chemical spills, because the chemical spill was reported and publicly known, and because there was no rule preventing the Fire Chief from making a report to a governmental body. (*Id.*, PageID.138.)

---

[1] This department is formerly known as the Michigan Department of Environmental Quality (DEQ).

On March 3, 2021, Schramm filed a grievance with the USW. (*Id.*) On May 6, 2021, Schramm filed his first lawsuit in this Court against Neenah (Case No. 2:21-cv-93). (*Id.*) USW was not a defendant in that lawsuit. Schramm's grievance with the USW was resolved on October 6, 2021, when Neenah agreed to allow him to return to work with back pay. (*Id.*, PageID.139-140.) The parties agreed to terms to settle the lawsuit against Neenah on October 16, 2021. (*Id.*, PageID.141.) The terms of the agreement included a return-to-work date of January 3, 2022. (*Id.*, PageID.142.) But the details were not worked out. (*Id.*)

On December 2, 2021, Schramm signed the settlement agreement, and on December 6, 2021, the agreement was signed on behalf of Neenah. (*Id.*, PageID.143.) A stipulation to dismiss was filed on December 13, 2021, and Schramm's counsel received settlement funds that day.[2] (*Id.*)

On December 28, 2021, Schramm was informed during a telephone call that he would not be returning to work on January 3, 2022, because of "problematic behavior dating back to mid-October." (*Id.*) A termination letter stated:

> Effective December 28, 2021, you were informed that Neenah is terminating your employment. The decision to end your employment is due to a series of concerning behavior over the past several weeks. This behavior is inconsistent with Neenah's values and is a violation of our harassment and inappropriate behavior policy.

(*Id.*, PageID.18.)

---

[2] That same day, the Court entered an order dismissing Schramm's original case with prejudice. (W.D. Mich. Case No. 2:21-cv-93, ECF No. 14, PageID.44.)

Schramm says that he was informed that his employment was terminated for several reasons: employees expressed concerns that Schramm had a "hit list" with five names; Schramm had repeatedly asked about Kathy Hill's whereabouts; Schramm had made statements that he was coming back to work "to raise hell"; and other reasons that were undisclosed to protect the identity of the employees involved. (*Id.*) The USW failed to file a grievance on Schramm's behalf because of these allegations. (*Id.*, PageID.145.) Schramm alleges that the stated reasons for his termination are false and were a pretext for Neenah's retaliatory conduct. (*Id.*)

### III. Motion to Dismiss

Neenah moves to dismiss Counts I, II, III, and VI. (ECF No. 23.) Schramm concurs in dismissing Count III (tortious interference claim). (ECF No. 25, PageID.231, n.2.) Neenah argues that Schramm failed to state a claim upon which relief may be granted under Counts I, II, and VI. The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* Alternatively, Neenah moves to dismiss Count I of the WPA under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Neenah argues that the WPA claim is preempted.

**IV. WPA claim (Count I)**

**A. Protected Conduct**

In Count I, Schramm says that he was terminated because he reported the bleach spill to EGLE. (ECF No. 18, PageID.137.) Neenah argues that Schramm did not engage in protected conduct under the WPA when he reported the bleach spill because Schramm failed to allege that he reported a violation of a law, regulation, or rule. (ECF No. 23, PageID.204.) Neenah argues that Schramm's complaint made allegations that establish (1) that he knew that Neenah was responding to the spill

7

in an appropriate manner, or (2) that he falsely reported that Neenah wasn't responding appropriately. (*Id.*) Neenah notes that neither claim would constitute protected activity under the WPA. (*Id.*)

The Michigan WPA provides that:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, ***a violation or a suspected violation of a law or regulation or rule*** promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body***, unless the employee knows that the report is false***, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Mich. Comp. Laws § 15.362 (emphasis added).

To support a WPA claim, Schramm must allege that (1) he engaged in protected activity as defined by the Act, (2) he was discharged, and (3) there existed a causal connection between the protected activity and the discharge. *Kuhn v. Washtenaw*, 709 F.3d 612, 629 (6th Cir. 2013). Schramm alleged in his complaint that on February 19, 2021, at 9:59 AM, he called EGLE and reported the chemical spill. (ECF No. 18, PageID.137.) Schramm says that he engaged in protected conduct under the WPA when he made this "good faith" report. (*Id.*, PageID.146.) Neenah argues that Schramm knew that Neenah had taken appropriate action by making the following allegations in his amended complaint:

> 10. The plant acted to contain the immediate risk to employees, the environment and the community. The first call for service was made by an employee at approximately 8:41 AM, to Alger County Central Dispatch (911). The employee requested that Munising Fire be dispatched for a major chemical spill and identified the chemical as

8

>    bleach. The employee further advised that they were in the process of evacuating the plant, as the spill was creating a chemical reaction.
>
>    11.    Both the Munising and Rock River Fire Departments were dispatched, as well as the Alger County Sheriff's Office and Alger County EMS.
>
>    12.    At approximately 8:47 AM, the first emergency responders arrived on scene, including but not limited to fire and EMS. Five employees were transported to Munising Memorial Hospital for treatment.

(ECF No. 18, PageID.137.)

Schramm also alleged in his complaint that approximately 2,000 gallons of bleach spilled in the plant due to a storage line failure. (*Id.*, PageID.136.) The spill was causing a chemical reaction, employees were being evacuated, and five employees were being taken to the hospital. (*Id.*, PageID.136 and 137.) Schramm failed to allege in his complaint that he reported *a violation of or suspected violation* of a law, regulation, or rule to EGLE. Schramm failed to assert in his response brief to Neenah's motion to dismiss that he reported a violation of or suspected violation of a law, regulation, or rule to EGLE. (ECF No. 25.) The absence of these obvious allegations show that he did not make such a report to EGLE. Certainly, this Court could assume that a significant bleach spill could potentially cause environmental damage and would entail a violation of some type, but Schramm did not make that allegation in his complaint nor did he assert that he reported a potential environmental violation to EGLE in any of his pleadings. The role of the Court is not to be an advocate for any party. The Court should not have to connect-the-dots to make conclusions regarding the intention of the Plaintiff or read into the complaint allegations that simply do not exist. Schramm failed to make any allegations

9

regarding what he reported to EGLE, and he failed to allege that he reported to EGLE any conduct protected under WPA.

In the opinion of the undersigned, Schramm's allegations fail to state a short and plain statement showing that the pleader is entitled to relief as set forth under Fed. R. Civ. P. 8.

### B. *Garmon* Preemption

Alternatively, Neenah argues that the National Labor Relations Board (NLRB) has exclusive jurisdiction over Schramm's Michigan WPA claim and this Court lacks jurisdiction over the WPA issue asserted in this case. Where it is clear "that the activities which a state purports to regulate are protected by § 7 of the National Labor Relations Act [NLRA] or constitute an unfair labor practice under § 8", the NLRB has exclusive jurisdiction. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244 (1959). Section 7 of the NLRA provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . . ." 29 U.S.C. §157. Section 8 provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1).

Under *Garmon*, Schramm's WPA claim is preempted if the NLRB has exclusive jurisdiction under the NLRA to decide the factual issue that supports the WPA cause of action. *San Diego Building Trades Council v. Garmon*, 359 U.S. at 244. Neenah

argues that Schramm's WPA claim was based upon a report "about workplace safety" which falls under the exclusive jurisdiction of the NLRB. (ECF No. 23, PageID.206.) Claims involving workplace safety are matters of concern to the NLRB. *Henry v. Laborers' Local 1191*, 495 Mich. 260, 289 (2014) (WPA claims involving reports of suspected criminal misconduct are not preempted under the NLRA but claims of retaliation for reporting wage and unsafe working conditions arguably fall under the NLRA and are preempted). "[T]he relationship between allegations of improper working conditions and employees' protected activity gets to the heart of the employer's labor practices." *Id.* at 292. Conversely, "[c]ontroversies that would otherwise be preempted by the NLRA are not preempted when a plaintiff's claim reflects 'deeply rooted' state interests or are matters of 'peripheral concern' to the NLRA." *Id.* at 306.

The focus of this Court's concern when determining whether a claim is preempted under the NLRA is the conduct that is being regulated. *Id.* at 287. Here, Neenah argues that conduct alleged by Schramm was his report to EGLE regarding matters of workplace safety. Such matters clearly fall within the purview of the NLRA.

Schramm, however, disagrees with Neenah's interpretation of his report to EGLE. Schramm states that he did not allege in his complaint that his report to EGLE concerned workplace safety. Rather, Schramm alleged that he "called to report the spill." (ECF No. 18, PageID.137.) Schramm called EGLE – the Michigan department that is responsible for the environment, public health, and

11

specifically the Great Lakes. EGLE's mission is "[t]o protect Michigan's environment and public health by managing air, water, land, and energy resources." https://www.michigan.gov/egle/about/mission. Nothing within EGLE's mission involves protecting workplace safety. That issue would fall on the Michigan Occupational Safety and Health Administration (MIOSHA). "The mission of the Michigan Occupational Safety and Health Administration (MIOSHA) is to help protect the safety and health of Michigan workers." https://www.michigan.gov/leo/bureaus-agencies/miosha/about-miosha. Importantly, Schramm did not telephone MIOSHA to report the chemical spill. If he had reported the spill to MIOSHA, Defendants' argument that Schramm was reporting a workplace safety issue might have some merit.

Schramm did not allege anywhere in his Amended Complaint that EGLE addressed workplace safety issues at the Neenah plant or that EGLE addressed any concerns that could arguably fall under Sections 7 or 8 of the NLRA.[3] Nothing in the record supports Neenah's conclusion that Schramm made a workplace safety report to EGLE.

In the opinion of the undersigned, Schramm's WPA claim is not preempted by the NLRA based upon the record before the Court.

---

[3] If Schramm alleged in his Amended Complaint that he reported the chemical spill to EGLE due to his concerns regarding workplace safety, Defendants would be correct and Schramm's WPA claim would be preempted. The record is not developed at this stage of the proceedings for the Court to make that conclusion.

12

## V. Breach of Settlement Agreement (Count II)

Schramm alleged that Neenah breached the terms of the Settlement Agreement by terminating him a second time before he was to return to work. Neenah argues that Schramm's breach of contract claim based upon the Settlement Agreement fails to state a claim upon which relief may be granted. Neenah states there could be no breach of contract because the Settlement Agreement did not include Schramm's reinstatement to employment as consideration for dismissal of the first lawsuit.

In the "Recitals" section of the Settlement Agreement, Schramm and Neenah acknowledged that Schramm filed a lawsuit and grievances against Neenah. The grievances were granted by Neenah and resulted in Schramm's reinstatement to Neenah effective October 18, 2021, which is well before the date the Settlement Agreement was executed. Negotiations to settle the lawsuit resulted in a resolution:

> B. Schramm filed a lawsuit against Neenah Paper Michigan, Inc. in the United States District Court for the Western District of Michigan that was assigned Case No. 2:21-cv-00093(the "Lawsuit") asserting he was terminated from his employment at Neenah in violation of Michigan's Whistleblowers' Protection Act; and
>
> C. Schramm also filed grievances number 21-1 and 21-2 against Neenah Paper Michigan, Inc. asserting that his discipline and discharge were in violation of the collective bargaining agreement between Neenah and the United Steelworkers Locals 2-87 and 2-96 (the "Collective Bargaining Agreement") that governs his employment; and
>
> D. Neenah Paper Michigan, Inc. granted grievances number 21-1 and 21-2, resulting in Schramm's reinstatement to his employment effective October 18, 2021 with full back pay and benefits for the time he was off work; and
>
> E. Schramm and Neenah have engaged in negotiations in an attempt to resolve the Lawsuit and have arrived at a mutually agreeable resolution.

(ECF No. 18-2, PageID.183.)

Schramm argues that the resolution included his return to work and cites Paragraph 3 of the "Terms" section of the Settlement Agreement, which provided as follows:

> **3.    Return to Work.**
>
> Schramm has been returned to Neenah's employment rolls effective October 18, 2021. Schramm will not, however, return to active employment until January 3, 2022, at which time he will be reinstated with vacation time for 2022 as if he had worked the entirety of 2021. Schramm will receive back pay and benefits pursuant to the resolution of his grievances between Neenah and his Union. He will not receive backpay or any other compensation for the time he is away from work between October 18, 2021 and January 3, 2022, but he will remain enrolled and eligible for all of Neenah's active employee benefit programs and that time off will not be characterized as a break in service for purposes of Schramm's seniority.

(*Id.*, PageID.184.)    Neenah argues that the Settlement Agreement did not include Schramm's return to work because the resolution of Schramm's grievances had already resulted in Schramm's return to work. Rehiring Schramm, according to Neenah, was not a term of the Settlement Agreement and Neenah's action in terminating him before his reinstatement date could not be a breach of that agreement.

Where a contract is clear, construction of the contract is a question of fact for the Court. *Van Buren Charter Twp v. Visteon Corp.*, 319 Mich. App. 538, 547 (2017). Where the contract is subject to two interpretations, factual development is necessary to determine the intent of the parties. *Id.* "Clear and unambiguous contractual language must be enforced as written." *Id.* (citation omitted).

The Amended Complaint alleges that Neenah breached the terms of the lawsuit by terminating him "just prior to his agreed-on-return-to-work-date." (ECF No. 18, PageID.146.) The unambiguous Settlement Agreement clearly states that

14

Schramm would return to active employment on January 2, 2022. Schramm alleges that he was terminated before Neenah returned him to active employment contrary to the agreement between the parties.[4] In the opinion of the undersigned, Schramm's allegations state a claim for breach of contract.

## VI. ERISA Retaliation (Count VI)

Schramm alleges that he was terminated in retaliation for attempting to secure his rights under Neenah's health insurance plan in violation of the Employee Retirement and Income Security Act (ERISA). 29 U.S.C. § 1002. Schramm alleges that he was "working through his Union to clarify and secure his rights" to health insurance. (ECF No. 18, PageID.150.)

It is unlawful under ERISA for an employer to take adverse action against an employee "for exercising any right to which he is entitled" under a benefit plan or to interfere with a right to which he "may become entitled under the plan". 29 U.S.C. § 1140. To establish a prima facie case of ERISA retaliation Schramm must show (1) he engaged in activity that ERISA protects, (2) that he suffered an adverse employment action, and (3) that a causal link exists between his protected action and his employer's adverse action. *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 628 (6th Cir. 2008).

---

[4] Neenah argues that the Settlement Agreement cannot be interpreted as a perpetual agreement for employment and nothing in its terms prevented termination for cause or termination after reinstatement. (ECF No. 23, PageID.210-211.) Schramm is not alleging that he was terminated for cause or that he was terminated after the reinstatement date set forth in the Settlement Agreement.

15

Neenah argues that Schramm has failed to allege that he was engaged in activity that ERISA intended to protect. Neenah argues that Schramm was not exercising any right under an employee benefit plan when he was "working through his Union to clarify and secure his rights under Neenah's health insurance plan." (ECF No. 23, PageID.215-217.) Neenah explains that the act of clarifying or securing rights under a health insurance plan is not exercising a right under an employee benefit plan and is not a protected activity under ERISA.

Schramm has not alleged that he was trying to use a benefit conferred to him under the plan. Schramm makes no allegation of fact to establish that he was attempting to exercise any rights under the plan. *Stein v. Atlas Industries*, 730 Fed. App'x 313, 320 (6th Cir. 2018) (claim that termination was due to use of health benefits that imposed significant cost on company). He alleges simply that he was trying "clarify and secure" whether he had Neenah health insurance coverage and whether he was responsible for the premium. Schramm's amended complaint alleges that he was working through his Union to clarify and secure his rights fails to rise to the level of protected conduct under ERISA. Schramm failed to allege that he was exercising a right that was available to him under Neenah's health care plan. (ECF No. 18, PageID.150.) Schramm cites to *Schwartz v. Gregori*, 45 F.3d 1017 (6th Cir. 1995) to support his claim that his lawsuit against Neenah was enough to exercise his rights under ERISA. In *Schwartz,* the protected conduct was a lawsuit to recover benefits conferred under the employee benefit plan after defendant threatened plaintiff with termination if she filed a lawsuit to recover those benefits.

The plaintiff was then terminated from her employment after she filed the lawsuit. Schramm has not alleged similar facts. Schramm failed to allege that he was terminated from employment due to his use of an employee benefit. *Stein*, at 320; *Hamilton v. Starcom Mediavest Group*, 522 F.3d 623, 627-628 (6th Cir. 2008) (such as an allegation that plaintiff was fired for exercising a right under the ERISA plan).

In the opinion of the undersigned Schramm's retaliation claim for exercising rights protected under ERISA fails to state a claim upon which relief may be granted.

### VII. Recommendation

It is respectfully recommended that the Court grant in part and deny in part Defendant Neenah's motion to dismiss (ECF No. 23) as follows:

(1) deny the motion as to Schramm's breach of the Settlement Agreement under Count II,

(2) grant the motion as to Schramm's WPA claim under Count I,

(3) grant the motion as to Schramm's intentional interference with a contractual relationship claim under Count III, as conceded by Schramm, and

(4) grant the motion as to Schramm's ERISA retaliation claim under Count VI.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections

17

constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:   January 25, 2023                      /s/ *Maarten Vermaat*
                                               MAARTEN VERMAAT
                                               U.S. MAGISTRATE JUDGE