UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS SCHRAMM,                          )
                        Plaintiff,       )
                                         )        No. 2:22-cv-47
-v-                                      )
                                         )        Honorable Paul L. Maloney
NEENAH PAPER MICHIGAN, INC., *et al.*,   )
                        Defendants.       )
                                         )

## <u>OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION</u>

This action is Plaintiff Thomas Schramm's second lawsuit against Defendant Neenah Paper.  Defendant terminated Plaintiff after he notified the State of Michigan about a chlorine spill at the plant.  Plaintiff sued and the parties eventually reached an agreement that, in part, allowed Plaintiff to return to work.  About two weeks later, and about one week before Plaintiff's return to work date, Defendant terminated Plaintiff again.  Plaintiff then filed this lawsuit.

Defendant filed a motion to dismiss (ECF No. 23).  The Magistrate Judge issued a report recommending the Court grant the motion in part and deny the motion in part (ECF No. 31).  Both parties filed objections (ECF Nos. 32 and 34).  Having reviewed the record, the Court will adopt the report and recommendation in part.

## I.

After being served with a report and recommendation (R&R) issued by a magistrate judge, a party has fourteen days to file written objections to the proposed findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  A district court judge

reviews de novo the portions of the R&R to which objections have been filed.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  Only those objections that are specific are entitled to a de novo review under the statute.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam).

## II.

Plaintiff filed a First Amended Complaint which functions as the controlling pleading (ECF No. 18 Compl.).  Against Defendant Neenah Paper, Plaintiff pleads five causes of action: (1) Count 1 - a violation of Michigan's Whistleblower Protection Act; (2) Count 2 - breach of the settlement agreement; (3) Count 3 - intentional interference with contractual relations; (4) Count 4 - breach of the collective bargaining agreement; and (5) Count 6 - retaliation in violation of the Employee Retirement Income Security Act (ERISA).[1]

Defendant seeks dismissal of Counts 1, 2, 3, and 6.  In his response to the motion, Plaintiff concedes and agrees to dismiss Count 3, his claim for intentional interference with contractual relations (ECF No. 25 at 6 n.1 PageID.231.)  The Magistrate Judge notes Plaintiff's concession in the R&R (R&R at 2 PageID.31).  The Magistrate Judge recommends dismissing Counts 1 and 6.  The Magistrate Judge also recommends denying the motion as to Count 2.  In his objection, Plaintiff does not oppose the recommendation that the Court dismiss Count 6, the ERISA retaliation claim (ECF No. 34 at 12 n.3 PageID.415).  With these concessions by Plaintiff, the Court has considered the recommendations and objections concerning Counts 1 and 2.

---

[1]     Plaintiff also sued his Union, the United Steel Workers (USW).  Plaintiff pleads a single cause of action against USW, breach of duty of representation, which is Count 5.

A.  Count 1 - Protected Activity

In Count 1, Plaintiff asserts a claim under Michigan's Whistleblower Protection Act (WPA).  Plaintiff alleges that on February 19, 2021, a "major chemical spill" occurred at Defendant's plant when a "storage line failed, causing the spill of approximately 2000 gallons of bleach within the plant" (Compl. ¶ 9 PageID.136).  Around 10:00 a.m., Plaintiff "called to report the spill to" the State of Michigan's Department of Environment, Great Lakes and Energy (EGLE) (*id.* ¶ 15 PageID.137).  EGLE "responded to and monitored the cleanup" (*id.* ¶ 16 pageID.137).  Plaintiff pleads that he "engaged in protected activity under MCL § 15.362 when he made his report of the chemical spill to EGLE" (*id.* ¶ 56 PageID.145).

In the motion to dismiss, Defendant requests the Court dismiss the claim because Plaintiff did not plead facts to show he was engaged in a protected activity.  The Magistrate Judge agrees.

The Magistrate Judge recommends finding that Plaintiff did not plead sufficient facts to establish the protected conduct element for a whistleblower claim (R&R at 9-10 PageID.370-71).  The Magistrate Judge finds that Plaintiff "failed to make any allegations regarding what he reported to EGLE and failed to allege that he reported to EGLE any conduct protected under WPA" (*id.*).  The Magistrate Judge declines to infer that the chemical spill would "entail a violation of some type" (*id.* at 9 PageID.370).  Plaintiff objects.

The Court agrees with Plaintiff that the complaint pleads sufficient facts to put Defendant on notice of the claim against it.  The complaint contains sufficient allegations of facts to state a claim for relief that is plausible on its face because the factual content permits reasonable inferences that Defendant is liable for the alleged misconduct.  *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  When resolving a Rule 12(b)(6) motion, courts *must* draw all reasonable inferences in plaintiff's favor.  *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) ("When evaluating a complaint's sufficiency, courts use a three-step process.  First, the Court must accept all of the plaintiff's factual allegations as true.  Second, the Court must draw all reasonable inferences in the plaintiff's favor.  And third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief.") (all citations omitted); *see, e.g., EPLET, LLC v. DTE Pontiac North, LLC*, 984 F.3d 493, 501 (6th Cir. 2021) ("First, this case is before us at the motion-to-dismiss stage.  We must therefore draw all reasonable inferences in favor of RACER, not Defendants."); *Lipman v. Budish*, 974 F.3d 726, 746 (6th Cir. 2020) ("On a motion to dismiss, we must draw all reasonable inferences in favor of Plaintiffs when assessing whether the facts in the complaint demonstrate a state-created danger."); *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 870 (6th Cir. 2020) ("But reading the complaint in the light most favorable to Plaintiff and making all reasonable inferences in her favor, as we must, it alleges far more than that.") (internal citation omitted).

The WPA prohibits retaliation against employees who report a violation or a suspected violation of a law or regulation or rule.  *See* Mich. Comp. Laws § 15.362.  One element a plaintiff must prove is that he or she engaged in a protected activity.  *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 629 (6th Cir. 2013).  Reporting a violation of a law, regulation or rule to a public body constitutes a protected activity under the WPA.  *Id.*  Plaintiff pleads that he called to report a chemical spill to an entity that constitutes a public body.  The Court agrees with the Magistrate Judge that Plaintiff did not explicitly plead that he reported a

violation of a law, rule or regulation.  The Court, however, disagrees that the allegations do not contain sufficient information to make the required inferences in Plaintiff's favor.

The factual allegations in the complaint are sufficient to meet the notice pleading standard in Rule 8 and, in combination with permissible inferences, state a plausible claim for relief.  First, Plaintiff's factual allegations permit the reasonable inference that the spill constituted a violation of a law, rule or regulation.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *16630 Southfield Ltd. P'ship v. Flagstar Bank, FSB*, 727 F.3d 502, 504 (6th Cir. 2013) (citing *Ashcroft*, 556 U.S. at 682).  Plaintiff's description of the events following the spill support the reasonable inference that chlorine spills pose health, safety and environmental risks.  Plaintiff pleads that the spill caused the evacuation of the plant (Compl. ¶ 10 PageID.136), that emergency responders including fire and medical personnel reported to the plant (*id.* ¶¶ 11-12 PageID.136-37), and that five employees were taken to a hospital for treatment (*id.* ¶ 12 PageID.137).  Common sense would permit the reasonable inference that the storage of chemicals that pose such a risk would be regulated and that leaks and spills would be prohibited.  The Court also notes that the federal government lists chlorine a hazardous substance.  *See* 40 C.F.R. § 302.4.  The Court can reasonably infer that some law, rule or regulation prohibits leaks and spills of chlorine.

Second, the Court can reasonably infer that Plaintiff reported the spill to EGLE.  The allegation in paragraph 15 is not a model of grammatical clarity.  The sentence employs a past tense verb followed by an infinitive; "called to report the spill."  Read literally, the

sentence alleges a past act (called) and the act's purpose (to report).  The allegation does not explicitly indicate whether Plaintiff actually relayed any information about the spill to someone at the EGLE.  But, Plaintiff also pleads that EGLE responded and then monitored the cleanup.  The allegations in the two paragraphs permit the reasonable inferences that Plaintiff both communicated a message to someone at EGLE and that the content of the message was to report the spill.  For the purpose of Defendant's motion, the Court must make these reasonable inferences.

The Court rejects this portion of the R&R and concludes that Plaintiff has plead sufficient facts to support a plausible claim for violation of the WPA.

### B.  Count 1 - *Garmon* Preemption

In the motion to dismiss, Defendant argues that this Court lacks jurisdiction over Plaintiff's WPA claim under the holding in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).  Under *Garmon*, the National Labor Relations Board (NLRB) has exclusive jurisdiction over matters falling under § 7 and § 8 of the National Labor Relations Act (NLRA).  *See id.* at 244; *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 219 (6th Cir. 1994) ("The goal of *Garmon* preemption is preservation of the National Labor Relations Board's primary jurisdiction over conduct violative of sections 7 and 8 of the National Labor Relations Act.").  Defendant contends that the Michigan Supreme Court has recognized that WPA claims related to workplace safety are subject to the jurisdiction of the NLRB.  *See Henry v. Laborers' Local 1191*, 848 N.W.2d 130, 145-46 (Mich. 2014).  Plaintiff responds that the conduct that is the focus of the dispute, his phone call, is not a workplace safety issue but a public health and environmental issue.

The Magistrate Judge concludes that the conduct at issue does not arguably fall under the exclusive jurisdiction of the NLRB and recommends denying this portion of Defendant's motion. Defendant objects. Defendant argues that Plaintiff's position as fire chief is a safety-focused role. Defendant argues that the complaint focuses on workplace safety. Finally, Defendant argues that the preemption standard is broad and covers claims that even arguably fall under the NLRA.

The Court overrules the objection. The conduct underlying this dispute, reporting a chlorine spill to a state entity responsible for protecting the environment and public health, does not arguably fall under either § 7 or § 8 of the NLRA. Section 7 provides

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157. "Section 7 focuses on the right to organize unions and bargain collectively." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). Section 8 states, in part, that "[i]t shall be an unfair labor practice for an employer--(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]" 29 U.S.C. § 158. Plaintiff was not organizing, forming, joining or assisting a labor organization. He was not engaged in a concerted activity for the purpose of collective bargaining.

Plaintiff's phone call did not arguably constitute a concerted activity for mutual aid or protection under the NLRA. Our Supreme Court has also found that "Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger

body of state law promoting public health and safety.  *Metro. Life Ins. Co. v. Massachusetts*,

471 U.S. 724, 756 (1985) (citation omitted).  The Court explained that

> Federal labor law in this sense is interstitial, supplementing state law where compatible, and supplanting it only when it prevents the accomplishment of the purposes of the federal act.  Thus the Court has recognized that it "cannot declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously, much of this is left to the States."

*Id.* at 756-57 (all citations omitted).  Our Supreme Court has more recently observed that

the "mutual aid or protection" language functions as a "catchall term" that "appears at the

end of a detailed list of" other activities related to union organizing and collective bargaining.

*Lewis*, 138 S. Ct. at 1625.  The Court held that "where, as here, a more general term follows

more specific terms in a list, the general term is usually understood to 'embrace only objects

similar in nature to those objects enumerated by the preceding specific words.'" *Id.* (citation

omitted).  While Plaintiff's phone call to report the spill might have resulted in the protection

of other employees' health and safety, the report did not constitute aid or protection related

to union organizing or collective bargaining.  As pled in the complaint, Plaintiff's WPA claim

is compatible with the NLRA and therefore is not subject to preemption under *Garmon*.

## C.  Count 2 - Breach of Settlement Agreement

In the motion to dismiss, Defendant requests the Court dismiss Plaintiff's claim for

breach of the settlement agreement.  Defendant argues that, as described in the complaint,

Plaintiff's reinstatement occurred as a result of the resolution of Plaintiff's Union grievance

and not as a result of the settlement to dismiss the first lawsuit.  Defendant also argues that

rehiring Plaintiff was not a term of the settlement agreement.  Defendant reasons that

terminating Plaintiff prior to his return-to-work date could not therefore violate the settlement agreement.

The Magistrate Judge reviewed the terms of the settlement agreement and finds that the agreement unambiguously states that Plaintiff would return to active employment on January 3, 2022. Defendant terminated Plaintiff before that date. The Magistrate Judge recommends denying Defendant's request to dismiss Count 2. Defendant objects. Defendant contends that the proper interpretation of the return-to-work provision establishes that Plaintiff had been rehired effective October 18, 2021, even though his physical attendance at work would not occur until January 3, 2022.

The Court overrules Defendant's objection. Plaintiff attached the settlement agreement to the complaint (ECF No. 18-2). The Magistrate Judge correctly interprets the relevant term of the settlement agreement. The parties signed the agreement in the first week of December 2021 (*Id.* PageID.186). The parties agreed that "Plaintiff is a current employee of Neenah Paper Michigan" (*id.* Recital ¶ A PageID.183). The parties also agreed that Defendant granted Plaintiff's grievances "resulting in Schramm's reinstatement to his employment effective October 18, 2021" (*id.* Recitals ¶ D PageID.183). The parties then set forth the terms of the "mutually agreeable resolution" of the first lawsuit (*id.* Recitals ¶ E PageID.183). The parties agreed that Plaintiff would return to "active employment" on January 3, 2022. "Schramm has been returned to Neenah's employment rolls effective October 18, 2021. Schramm will not, however, return to active employment until January 3, 2022, at which time he will be reinstated with vacation time for 2022 as if he had worked the entirety of 2021" (*id.* Term ¶ 3 PageID.184).

Paragraph 3 of the Terms of the Settlement Agreement imposes an obligation on Defendant: Defendant must allow Plaintiff to "return to active employment" on January 3, 2022.  Defendant mischaracterizes Count 2.  Plaintiff does not plead a breach arising from the failure to rehire; he pleads a breach based on his second termination.  "Neenah breached the settlement without cause and in bad faith when it terminated him a second time just prior to his agreed-on return-to-work date" (Compl. ¶ 64 PageID.146).  The allegations in the complaint include sufficient facts to support a claim for breach of the settlement agreement.

III.

The Court has reviewed the objections and will adopt the report and recommendation in part and will reject the report and recommendation in part.  The Court rejects the Magistrate Judge's finding and recommendation that the complaint fails to state a whistleblower claim.  The Court adopts the rest of the Magistrate Judge's findings and recommendations.

## ORDER

Consistent with the accompanying Opinion, the Court **ADOPTS in part and REJECTS in part** the Report and Recommendation (ECF No. 31).  The Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss (ECF No. 23).  The Court dismisses Counts 3 and 6.  **IT IS SO ORDERED.**

Date:    March 8, 2023                            /s/  Paul L. Maloney
                                                                        Paul L. Maloney
                                                                       United States District Judge